By the Court
 

 (Marshall, C. J.).
 

 Section 5903-19,
 
 *462
 
 General Code, under which, this indictment is brought, reads in its pertinent parts as follows: “Any person who shall have in his possession or control any cartridge, shell, bomb or similar device, charged or filled with one or more explosives, intending to use the same or cause the same to be used for an unlawful purpose, or attempts to use it to the injury of persons or property, or places or deposits it upon or about the premises of another without his consent, shall be deemed guilty of a felony, and upon conviction shall be punished,” etc. This statute contains the word “explosives,” and that word is defined in Section 5903-1, General Code, as follows :
 

 “The term ‘explosive’ or ‘explosives’ whenever used in this act * * * shall be held to mean and include any chemical compound or mechanical mixture that is intended for the purpose of producing an explosion, that contains any oxidizing and combustible units, or other ingredients, in such proportions, quantities or packing that an ignition by fire, friction, by concussion, by percussion, or by detonator of any part of the compound or mixture may cause such a sudden generation of highly heated gases that the resultant gaseous pressures are capable of producing destructive effects on contiguous objects, or of destroying life or limb.
 

 “For the purpose of this act manufactured articles shall not be held to be explosives when the individual units contain explosives in such limited quantities, of such nature, or in such packing, that it is impossible to procure a simultaneous or a destructive explosion of such units, to the injury of life, limb or property by fire, by friction, by con
 
 *463
 
 cussion, by percussion, or by detonator, such as fixed ammunition for small arms, firecrackers, safety fuse matches, et cetera.”
 

 It was proved at the trial that the cartridges contained an explosive known as nitro-cellulose, this being the usual explosive employed in cartridges for use in firearms. The evidence further established the intention of the accused to use them for unlawful purposes, namely, in defending rumboats in the bootlegging business in the event he found it necessary to protect his boats from so-called hijackers. No question is made upon either of these points, or upon the point that the accused had the cartridges in his possession. It is, however, contended that the cartridges did not come within the definition of
 
 ‘1
 
 explosives,” as that term is defined in Section 5903-1. It is contended on the part of the state that Section 5903-19, General Code, states a complete offense, and that the term “explosive” should not be limited to the definition contained in Section 5903-1; that it is only necessary to prove possession of the cartridges, that they contained explosives, as that term is defined by lexicographers, and that the accused had them in his possession with intent to use them for an unlawful purpose. It is the contention of counsel for the accused that the definition of the term “explosives” limits Section 5903-19 and every other section under Chapter 7, Title II, Part Second, General Code (Sections 5903-1 to 5903-26, General Code). It is of course a question of legislative intent. It is argued that the Legislature could not have intended to define “explosives” so that merchants having cartridges for sale to be used in hunting rifles or shotguns would be violators of this sec
 
 *464
 
 tion. Neither could the Legislature have intended that hunters, or other lawful users of firearms, having a limited supply of said cartridges in their possession, would be violators. Counsel for the state rely upon the “unlawful purpose” as the element which constitutes the gravamen of the offense, and upon the want of such unlawful purpose as the protection of merchants, hunters, and other persons who are not evilly disposed.
 

 The problem is one of no great difficulty. Section 5903-1 makes the statute’s definition of “explosives” apply “whenever used in this act.” And in the second paragraph of that section we find the following: “For the purpose of this act manufactured articles shall not be held to be explosives when the individual units contain explosives in such limited quantities, of such nature, or in such packing, that it is impossible to procure a simultaneous or a destructive explosion of such units, to the injury of life, limb or property by fire, by friction, by concussion, by percussion, or by detonator, such as fixed ammunition for small arms,” etc. Both sections were enacted at the same time as a part of the same legislative act, and the conclusion is inevitable that the definition contained in Section 5903-1 must be applied to every section of that act. The evidence introduced at the trial shows that the cartridges in question were adapted to use ‘ ‘ as fixed ammunition for small arms.” Section 5903-19 is a penal statute, and is therefore to be strictly construed in so far as it defines the offense, and that construction is to be aided by definition of terms employed therein, when such definitions are expressly made applicable.
 

 We have therefore reached the conclusion that it
 
 *465
 
 was not sufficient to prove that the explosive matter in the cartridges was such as to come within the general definition of lexicographers, but that it must also meet the definition contained in Section 5903-1. This it failed to do. There was therefore a complete failure of proof upon an essential element of the indictment. The judgment of the Court of Appeals affirming the judgment of the court of common pleas must therefore be reversed.
 

 Judgment reversed.
 

 Jones, Matthias, Allen, Kink ads and Robinson, JJ., concur.
 

 Day, J., not participating.