## UNITED STATES v. ONE CHRYSLER SEDAN, MOTOR NO. C77048.
### No. 3979.

District Court, M. D. Pennsylvania.
April 2, 1937.

See also (D.C.) 16 F.Supp. 629.

Frederick V. Follmer, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for the United States.

David T. Davis, Jr., and R. Lawrence Coughlin, both of Wilkes Barre, Pa., for petitioner.

WATSON, District Judge.

This is a petition by the Commercial Credit Company for the remission or mitigation of the forfeiture of a certain Chrysler touring sedan automobile, which was seized by members of the Pennsylvania State Constabulary and forfeited to the United States by order of the court for violation of the Internal Revenue Laws relating to liquor. At the time of the seizure, the automobile was in the possession of and being operated by one Michael Tramantan.

Hearing was had, and from the evidence it appears that the automobile in question was purchased in the name of Ann Tramantan in December, 1935, from the Capitol Motors, Inc., of Trenton, N. J., of which one Samuel Himmelstein was president. Capitol Motors, Inc., was successor to Himmelstein Motors. The purchaser, Ann Tramantan, was at the time the automobile was purchased, and is now, the wife of one Michael "Daylight" Tramantan. The latter had a reputation in and about Trenton, N. J., for at least seven years of being a racketeer, bootlegger, numbers man, and gunman, and, at the time of the purchase, had a police record. This reputation and record was known to Samuel Himmelstein at the time of the sale of the automobile in question.

In the year 1934 Ann Tramantan and Michael Tramantan, her husband, negotiated with Himmelstein Motors, predecessor to Capitol Motors, Inc., for the purchase of a Plymouth automobile. At that time Samuel Himmelstein caused an investigation to be made regarding the credit and reputation of the prospective purchasers. The report of the investigation bureau revealed the bad reputation and police record of Michael Tramantan. A copy of this report was sent to the office of the Commercial Credit Company at Asbury Park, N. J., and another copy was kept in the files of Himmelstein Motors, and subsequently transferred to the files of the Capitol Motors, Inc. The negotiations at that time did not result in a sale.

Ann Tramantan has always borne a good reputation, and has never been known to violate the law. She has supported herself throughout her married life by working as a beauty operator. However, she lived with her husband before and at the time the automobile in question was purchased. Unquestionably, she knew about her husband's unlawful activities. The automobile was purchased for the use of herself and her husband, and she had reason to believe that her husband would use it in violation of the laws of the states and of the United States relating to liquor.

At the time of the purchase of the automobile, sales of automobiles by Capitol Motors, Inc., were financed by the Commercial Credit Company through its Philadelphia office. Capitol Motors, Inc., acting as agent for the Commercial Credit Company, through its president, Samuel Himmelstein, caused the Atlantic Credit and Adjustment Bureau of Trenton to make an investigation of the credit and reputation of Ann Tramantan. Himmel-

stein did not reveal to the credit bureau the fact that Ann Tramantan was the wife of Michael Tramantan. The credit bureau sent its report direct to the Philadelphia office of the Commercial Credit Company. This report showed that Ann Tramantan was married, but did not reveal the name, reputation, or record of her husband. The purchaser received the automobile and signed a conditional sale agreement. This agreement was assigned by Capitol Motors, Inc., to the Commercial Credit Company. Accompanying the assignment was a statement by Capitol Motors, Inc., by Samuel Himmelstein, president, that it had no reason to believe the purchaser violated any laws concerning liquor. On the basis of this report of the credit bureau and the statement by Capitol Motors, Inc., the Commercial Credit Company accepted the assignment of the conditional sale agreement, and accepted the draft drawn on it by Capitol Motors, Inc., in the sum of $368. In payment for the automobile the purchaser traded in a Plymouth automobile, paid $136 in cash, and executed a note payable in twelve equal monthly installments of $36 each. There is now due and owing to the Commercial Credit Company on this note the sum of $180, which is in default. Therefore, at the time of the seizure of the automobile, title and right to possession were in the Commercial Credit Company.

Jurisdiction of this court to remit or mitigate the forfeiture of vehicles seized for violation of the Internal Revenue Laws is created by the Act of August 27, 1935, c. 740, § 204, 49 Stat. 878, 27 U.S. C.A. § 40a. Prior to the enactment of this act, there was no provision in the law for granting relief in a case like this to innocent owners or lienors of property seized for violation of the Internal Revenue Laws. United States v. One Ford Coupe, 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279, 47 A.L.R. 1025; United States v. One 1935 Chevrolet Coupe (D. C.) 13 F.Supp. 986.

The act of 1935 provides, inter alia, as follows: "In any such proceeding the court shall not allow the claim of any claimant for remission or mitigation unless and until he proves (1) that he has an interest in such vehicle or aircraft, as owner or otherwise, which he acquired in good faith, (2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle or aircraft, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant has made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation."

The record in the case discloses that the interest asserted by the claimant does not arise out of nor is it subject to any contract or agreement under which a person having a record or reputation for violating laws relating to liquor has a right with respect to the vehicle. The only person other than the petitioner who has had any right in the Chrysler is Mrs. Ann Tramantan, who has no such record or reputation. By order of this court, dated January 4, 1937, it was decided that the claimant has an interest in the vehicle which is the subject of this petition.

The only questions left for determination are whether the claimant's interest was acquired in good faith, and whether the claimant had at any time any knowledge or reason to believe that the vehicle was being or would be used in the violation of laws of the United States or of any state relating to liquor?

It has been established by the evidence that Capitol Motors, Inc., knew the identity and reputation of Michael Traman-

tan, the purchaser's husband, and had reason to believe that the automobile would be used by Michael Tramantan in violation of the laws relating to liquor. Shortly after the sale, Samuel Himmelstein saw Michael Tramantan driving the automobile. The question then is, whether the lack of good faith and the knowledge of the dealer should be imputed to the claimant?

 In entering into the transaction by which it acquired its interest, the claimant relied almost entirely upon the dealer, so far as matters relating to the character and credit of the purchaser were concerned. On the basis of statements by the dealer and an investigation solicited by the dealer, the claimant determined to assume the risk. By placing its confidence in the dealer and relying upon its investigation and representations, the claimant must be held to knowledge of facts known to the dealer, whether disclosed to the claimant or not. The dealer acted as agent for the claimant in the transaction. It is a familiar principle that knowledge of the agent is imputed to the principle, and this is especially true where the agent is employed for the purpose of obtaining such knowledge. United States v. Cooksey (C.C.A.) 275 F. 670.

The finance companies can ordinarily avoid a situation such as the one existing in this case by making investigations through others than through the dealer who sells the automobile and desires to negotiate the conditional sales contract signed by the purchaser. An independent investigation would have disclosed that Michael Tramantan was the husband of Ann Tramantan; that they were living together; that Michael Tramantan was a racketeer and a bootlegger, and that the automobile would be used (as it was) in violation of the law.

 The burden is upon the claimant to establish its right to relief under the act. United States v. One 1936 Model Lafayette Coupe (D.C.) 14 F.Supp. 1003; United States v. One 1933 Ford Coach (D.C.) 14 F.Supp. 243. The Commercial Credit Company has not met this burden, and its petition should be dismissed.

Now April 2, 1937, claimant's petition is dismissed.